COSGRAVE, J.
The petition herein recites that plaintiffs, Franklin Alter and George T. Alter, and the defendants Robert S. Alter, Lucien W. Alter, Blanche Alter, Elizabeth T. Alter, Rebecca W. Alter, are the children of Franklin Alter, deceased.
It alleges that on the 14th day of August, 1909, the said Franklin Alter, their father, made his last will and testament, which was duly admitted to probate by the probate court of Hamilton county, Ohio, March 16, 1916.
Under the terms of the will, after making certain specific bequests and dispositions of his property, he provided, in Item 6, as follows:
“I give, devise and bequeath all the rest, residue and remainder'of my property, real, personal and mixed, including all lapsed or void legacies and devises, if any, to The Union Savings Bank and Trust Company, a corporation organized under the laws of Ohio, at Cincinnati, Ohio, and to Clifford B. Wright and to Walter B. Hofer, both of Cincinnati, Ohio, in trust nevertheless for the period of ten years from the date of my death, for the following uses and purposes: To be held, managed, controlled and invested, and from time to time as need, be, reinvested by my said Trustees, or their successors in said trust; as hereinafter provided, for the period of ten years from and after my death, for the benefit and advantage of my eight children, namely, Franklin Alter, George T. Alter, Henry T. Alter, Robert S. Alter, Lucien W. Alter, Blanche Alter, Elizabeth T. Alter and Rebecca W. Alter, it being my wish that my estate shall be so managed and invested that it will produce a sure and regular income rather than hazard in what may promise great gain. From the income of my estate my said Trustees or their successors in said trust shall, after paying all the expenses incident to said trust, pay to each of my said children, the sum of Twenty-five Hundred Dollars ($2,500) per annum for said period of ten years from my death. Should the net income of my estate be insufficient for any reason to pay each of my said children said sum of Twenty-five Hundred Dollars per annum as aforesaid, then in that event my said Trustees or their successors in said trust, shall pay to each of my said children an equal and proportionately less amount. Should the net income of my estate be more than sufficient to pay each of my said children said sum of Twenty-five Hundred Dollars per annum, *519 such excess shall go in augmentation and become a part of the principal of my estate. My Trustees shall accept no. order on said annual payments from any of my said children, nor shall said annual payments or any part thereof be in any way pledged or hypothecated by any of my said children. In the event of the death of any particular child of. mine before or after my_ death, leaving issue, my Trustees shall pay annually to its issue, share and share alike but per stirpes the same -amount or portion of the net income of my estate as its parent would have received if living, as above provided. In the event of the death of any child of mine whether before or after my death, leaving no issue or leaving issue, all dying before the period of final distribution herein, the income which would have been or which was theretofore payable to such child or such issue, shall go in augmentation and become a part of the principal of my estate. ’ ’
The testator nominated and appointed the Union Savings Bank and Trust Company, Clifford B. Wright, and Walter B. Hofer, all of Cincinnati, Ohio, to be the executors and trustees of his last will and testament, and directed that no bond be required of them, but that this qualification should not apply to their successors.
The pleadings present two issues, one as to the authority of the court to determine the intention of the testator as deduced from the language of Item 6, and also the intention of the testator as deduced from the language of. paragraph three of said Item 6.
The settled rule in Ohio in the construction of wills, is to take the will as it were by its four corners, and analyzing it thoroughly from those four viewpoints, to determine the intention of the testator therefrom.
The court has read with much care and benefit the many authorities submitted by the attorneys both for the plaintiffs and the defendants. It suffices to say that these authorities would justify the court in giving a more liberal and generous construction to the will than it is disposed to do at the present time, having in view present unsettled economic and financial conditions. It will content itself in reaching a conclusion reasonably deduced from the will itself as manifested from its language and its plain purport.
*520 ' The eminent Judge Story, one of the most profound Jurists of our country, in referring to the construction of wills, uses this significant language:
“The struggle in all such cases is to accomplish the real ob.jeets of the testator, so far as they can be accomplished consistently with the principles of law; but in no ease to exceed his intention fairly deducible from the very words of the will. In fine, where the meaning of the language of the will is plain, the court of construction does not go outside to discover what the testator intended; but where the provisions are doubtful or may admit of more than one interpretation, the court will put itself in the situation of the testator, in reference to the property and the relative claims of the testator’s family, the relations subsisting 'between him and them, and the circumstances which surrounded him, in order to be enlightened * *
This rule laid down by Justice Story has been followed by numerous authorities, and may be accepted as settled law.
Following the reasoning of this rule, we find from the language of the will, and the evidence, that at the time of the making of his will the testator gave to his children substantially one-half of the income of his estate, for their benefit and advantage. If the value of the estate remained the same as of the time of his death, the determination of his intention would be very easy of ascertainment. He lived nearly seven years after the making of his will. His estate at the time of his death “had increased many fold, and has continued to increase during the years’ subsequent thereto. It is to be regretted that with the changed conditions of the value of his estate he did not meet these changes by adding a codicil to his will. It is hardly conceivable that at the time he made his will giving practically one-half of the then income of his estate to his children, he intended that such half should be determined as his will as of the time of his death, much less at a period seventeen years after its date.
No court, whether it be sitting as a court of law or as a court of equity, can juggle with the terms of a will, and yet it is its duty in so far as may be deduced from the language of the will itself, and the state of mind of the testator at the time of its making, as evidenced by his language, to determine what he would dó in view of the changed conditions of his estate.
*521 In the before mentioned Item 6, wherein he provided that the sum of $2,500 per year should be used for the benefit and advantage of each of his children, that sum then had a purchasing value largely in excess of its present value, and there is no doubt from the language of the will itself that he intended thereby to give to his children a sum of money which at that time had a value which would be beneficial and advantageous to his children.
When he provided in 1909 that his children should each receive $2,500 per year for their benefit and advántage he could only have had in mind the purchasing value of $2,500 at that time, and it was at that time a fair proportion of the income he derived from his business, but which after that time vastly increased in amount. He could not, and did not forsee that changed conditions would cause that $2,500 to shrink in its purchasing power, so that at the present time it only equals substantially the sum of $1,000. It would be a perversion of the intention of the testator to assume that while his estate was increasing very many times in value, that the beneficiaries should each be subjected to a decreased value of income to practically $1,000 per year when at the time he named $2,500 he no doubt justly assumed he was providing his children with a fairly comfortable revenue, which would enable them to live respectably, if not luxuriously.
We may well inquire whether or not that which he thought would be fairly beneficial and advantageous to his children, has not proven to be a delusion under present existing conditions.
In order to carry out the intention of the testator does it not become the duty of the court to add to the sum mentioned in his will such additional amount as will carry out the plain intent of the testator. In doing this his children will receive at the present time that which he intended they should receive under the terms of his will.
This court has after serious and most mature deliberation reached the conclusion that the sum of $6,000 a year for each of his children is only giving to them the value in money which the testator intended they should have at the time he made his *522 will, and this allowance is amply justified by the large increase of the income of the estate.
It is the order of this court that this increased allowance take effect from the time of filing the petition, August 16, 1919.
There remains a further question to be disposed of in this proceeding, and that is the construction to be given to paragraph 3 of Item 6, of this will. This paragraph reads as follows:
“I direct, however, that my trustees shall sell and dispose of my stock in the American Tool Works Company, of Cincinnati, Ohio, within one year after my death, unless my trustees shall unanimously agree that it would be for the 'best interest of my estate to hold said stock and continue my interest in said the American Tool Works Company for a period of three years after my death, then in that event I direct that said stock be sold and disposed of at the end of the last mentioned period; when said stock is so sold the proceeds derived therefrom- shall be reinvested by my said trustees as part of the principal of my estate.”
It appears from the testimony that the American Tool Works Company of Cincinnati, Ohio, was a corporation organized under the laws of West Virginia; that after the death of the testator a corporation was formed under the laws of the state of Ohio, and that all the stock and assets of the West Virginia corporation were transferred to the Ohio corporation.
This branch of the case was not thoroughly presented to the consideration of this court, nor insistently pressed for a determination. The court will therefore pass this question for future determination, if presented by counsel. representing both the plaintiffs and the defendants.
The court further orders that this case be retained for future consideration and determination, as circumstances and conditions may suggest and require.
The court has read and re-read the many authorities submitted to it by'counsel on both sides, and desires to express its appreciation for the painstaking effort that counsel has made, both for the plaintiffs and the defendants, to- enable the court to come to what it believes to be a righteous conclusion in this matter.